

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

**ENTERED**
**03/29/2013**

|                          |   |                          |
|--------------------------|---|--------------------------|
| IN RE                    | ) |                          |
|                          | ) |                          |
| HENRY A. SPIVEY and      | ) | CASE NO. 11-80278-G3-7   |
| CYNTHIA SPIVEY,          | ) |                          |
|                          | ) |                          |
| Debtors,                 | ) |                          |
|                          | ) |                          |
| UNITED STATES TRUSTEE,   | ) |                          |
|                          | ) |                          |
| Plaintiff,               | ) |                          |
| v.                       | ) | ADV. NO. 12-8002         |
|                          | ) |                          |
| HENRY A. SPIVEY and      | ) |                          |
| CYNTHIA SPIVEY,          | ) |                          |
|                          | ) |                          |
| Defendants.              | ) |                          |
|                          | ) |                          |

<u>MEMORANDUM OPINION</u>

The court has held a trial in the above captioned adversary proceeding. The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered denying discharge. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Henry A. Spivey and Cynthia Spivey ("Debtors") filed a voluntary joint petition under Chapter 7 of the Bankruptcy Code on May 23, 2011.

In the instant adversary proceeding, the United States
Trustee ("UST") seeks denial of discharge, under Sections
727(a)(2), 727(a)(3), 727(a)(4), 727(a)(5), 727(a)(6), and
727(a)(11) of the Bankruptcy Code.

Together with their petition, Debtors filed, <u>inter
alia</u>, schedules of assets and liabilities, and a statement of
financial affairs.  (Docket No. 1, Case No. 11-80278-G3-7).

Both Debtors signed the "Declaration Concerning
Debtor's Schedules," which provides:  "I declare under penalty of
perjury that I have read the foregoing summary and schedules,
consisting of 40 sheets, and that they are true and correct to
the best of my knowledge, information, and belief."  (Docket No.
1, Case No. 11-80278-G3-7, at p. 52).

Both Debtors signed the "Declaration under Penalty of
Perjury by Individual Debtor" regarding the statement of
financial affairs, which provides:  "I declare under penalty of
perjury that I have read the answers contained in the foregoing
statement of financial affairs and any attachments thereto
and that they are true and correct."  (Docket No. 1, Case No. 11-
80278-G3-7, at p. 60).[1]

---

[1]Henry Spivey testified that Debtors did not sign each
schedule, but that Debtors signed a form permitting Debtors'
then-attorney, Anis Damani, to electronically sign and file
Debtors' schedules and statement of financial affairs.  He
testified that Debtors received the schedules and statement of
financial affairs electronically, and reviewed them.  He
testified that he has no doubt that Debtors signed them.

In Item 2 of Debtors' schedule B, Debtors were directed to list:  "Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives."  Debtors listed one bank account, a checking account at Bank of America, with a balance of $100.  (Docket No. 1, Case No. 11-80278-G3-7, at p. 15).

Henry Spivey testified that, on the petition date, in addition to the Bank of America checking account, Debtors also had savings accounts at Chocolate Bayou Community Federal Credit Union, with a balance of $20, and at Bank of America, with a balance of $500.  The savings accounts were not disclosed in Debtors' schedule B.

In Item 7 of Debtors' schedule B, Debtors were directed to list:  "Furs and jewelry."  Debtors placed an X in the column indicating "None."  (Docket No. 1, Case No. 11-80278-G3-7, at p. 16).

Henry Spivey testified that, on the petition date, Debtors had their wedding rings, three watches, and necklaces. The jewelry was not disclosed in Debtors' schedule B.

In Debtors' statement of financial affairs, Item 18.a. directed Debtors to list, with respect to any businesses they owned:

> a. If the debtor is an individual, list the names,
> addresses, taxpayer identification numbers, nature of
> the businesses, and beginning and ending dates of all
> businesses in which the debtor was an officer,
> director, partner, or managing executive of a
> corporation, partner in a partnership, sole proprietor,
> or was self-employed in a trade, profession, or other
> activity either full- or part-time within six years
> immediately preceding the commencement of this case, or
> in which the debtor owned 5 percent or more of the
> voting or equity securities within six years
> immediately preceding the commencement of this case.

Debtors filled in the box indicating "None." (Docket No. 1, Case No. 11-80278-G3-7, at p. 58).

Henry Spivey testified that he did not receive real estate commissions during the two years prior to the date of filing of the petition in the instant Chapter 7 case. However, during 2009 and 2010, Debtors claimed losses from Mr. Spivey's real estate business as tax deductions. (UST Exhibits 10, 11). Mr. Spivey's real estate business was not disclosed in Debtors' statement of financial affairs.

In Debtors' statement of financial affairs, Item 10.a. directed Debtors to:

> a. List all other property, other than property
> transferred in the ordinary course of the business or
> financial affairs of the debtor, transferred either
> absolutely or as security within two years immediately
> preceding the commencement of this case. (Married
> debtors filing under chapter 12 or chapter 13 must
> include transfers by either or both spouses whether or
> not a joint petition is filed, unless the spouses are
> separated and a joint petition is not filed.)

Debtors filled in the box indicating "None." (Docket No. 1, Case No. 11-80278-G3-7, at p. 56).

4

Henry Spivey testified that, within the two years prior to the date of filing of the petition in the instant case, Debtors sold a 2008 Nissan Pathfinder for $14,000. He testified that Debtors owed $14,074 on a debt secured by the Pathfinder, such that Debtors did not receive any cash on the sale of the Pathfinder.

Henry Spivey testified that, during February, 2011, approximately three months prior to the date of filing of the petition in the instant case, Debtors sold an unencumbered 2008 Toyota Tundra for $19,000. He testified that Debtors used $6,000 of the sales proceeds to buy a 2008 Ford F-150, and the remainder to pay bills.

Debtors did not disclose the transfers of the 2008 Nissan Pathfinder or the 2008 Toyota Tundra in their statement of financial affairs.

In Debtors' statement of financial affairs, Item 7 directed Debtors to:

> List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

Debtors filled in the box indicating "None." (Docket No. 1, Case No. 11-80278-G3-7, at p. 55).

5

Henry Spivey testified that Debtors tithed $7,566 to their church during 2009, and $7,471 to their church during 2010. Debtors did not disclose these charitable contributions in their statement of financial affairs.

In Debtors' statement of financial affairs, Item 3.a. directed Debtors to list:

> a. Individual or joint debtor(s) with primarily consumer debts. List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within 90 days immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

Debtors listed payments to TDECU, two Bank of America accounts, Chase Bank, and Nordstrom FSB. (Docket No. 1, Case No. 11-80278-G3-7, at p. 54).

Cynthia Spivey testified that Debtors made payments totaling $2,635.71 to American Express within the 90 days immediately preceding the commencement of the instant Chapter 7 case. Debtors did not disclose these payments in their statement of financial affairs.

Both Debtors testified that they gave all the information requested to their attorney, and that their attorney

failed to put the information on Debtors' schedules and statement
of financial affairs.[2]  However, both Debtors testified that they
reviewed the schedules and statement of financial affairs.

Cynthia Spivey testified that some of her purchases on
her American Express card were frivolous.  She testified that,
beginning in 2010, American Express demanded that the entire
balance be paid in full.  She testified that she then made
several purchases on the American Express card, and returned
those purchases, because she believed the returns would be
recognized by American Express as payments.

Henry Spivey testified that Debtors' debts exceeded the
value of their assets beginning in 2010, due to excessive
spending on credit cards.  He testified that Debtors began
incurring the credit card debts during 2004 or 2005.  He
testified that he lost his job during February, 2011.  He
testified that Debtors continued to incur additional credit card
debt after Debtor lost his job until immediately prior to the
date of filing of the instant Chapter 7 case.

Henry Spivey testified that he believes Debtors did not
have an intent to defraud creditors.  He testified that Debtors
had additional credit remaining available to them on the petition
date, in the amounts of $33,000 from American Express, and $2,000

_____

[2]On April 4, 2012, Damani filed an agreed motion to withdraw
as Debtors' attorney.  (Docket No. 26, Case No. 11-80278-G3-7).
The motion was granted, by order entered on May 3, 2012.  (Docket
No. 28, Case No. 11-80278-G3-7).

from Texas Dow Employees Credit Union, which were not "run up" in advance of the filing of the petition in the instant case.

Henry Spivey testified that some of the payments made by Debtors to credit card companies came from cash advances on other credit cards.

The United States Trustee ("UST") gave Debtors notice of an examination of both Debtors under Bankruptcy Rule 2004. Henry Spivey appeared for the examination.  Cynthia Spivey did not appear.  Both Debtors testified that Henry Spivey instructed Cynthia Spivey that she was not required to appear.

The notice of Rule 2004 examination directed Debtors to produce seven categories of documents.  Henry Spivey testified that he and his wife willfully refused to produce the documents requested by the UST.

UST did not move for an order directing production of the requested documents, either in the instant Chapter 7 case or in the instant adversary proceeding.

Although Debtors did not produce the documents requested by the UST, Debtors allowed UST to obtain their credit card statements directly from the credit card companies as to seven credit card accounts.  Henry Spivey introduced statements from eight other accounts into evidence at the trial in the instant adversary proceeding.

Conclusions of Law

Section 727 of the Bankruptcy Code provides in

pertinent part:

(a) The court shall grant the debtor a discharge,
unless -

* * *

(2) the debtor, with intent to hinder, delay, or
defraud a creditor or an officer of the estate
charged with custody of property under this title,
has transferred, removed, destroyed, mutilated, or
concealed, or has permitted to be transferred,
removed, destroyed, mutilated, or concealed -

(A) property of the debtor, within one year
before the date of the filing of the
petition; or

(B) property of the estate, after the date of
the filing of the petition;

(3) the debtor has concealed, destroyed,
mutilated, falsified, or failed to keep or
preserve any recorded information, including
books, documents, records, and papers, from which
the debtor's financial condition or business
transactions might be ascertained, unless such act
or failure to act was justified under all of the
circumstances of the case;

(4) the debtor knowingly and fraudulently, in or
in connection with the case -

(A) made a false oath or account;

* * *

(5) the debtor has failed to explain
satisfactorily, before determination of denial of
discharge under this paragraph, any loss of assets
or deficiency of assets to meet the debtor's
liabilities;

(6) the debtor has refused, in the case -

    (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

                  * * *

    (11) after filing the petition, the debtor failed to complete an instructional course concerning personal financial management described in section 111, except that this paragraph shall not apply with respect to a debtor who is a person described in section 109(h)(4) or who resides in a district for which the United States trustee (or the bankruptcy administrator, if any) determines that the approved instructional courses are not adequate to service the additional individuals who would otherwise be required to complete such instructional courses under this section (The United States trustee (or the bankruptcy administrator, if any) who makes a determination described in this paragraph shall review such determination not later than 1 year after the date of such determination, and not less frequently than annually thereafter.)

11 U.S.C. § 727.

      The purpose of Section 727(a)(2) is to deny discharge to those debtors who, with intent to defraud their creditors, transfer property that would have become property of the estate. In order to deny discharge under this section of the Bankruptcy Code, the statute requires the party objecting to discharge to prove: 1) a transfer of property, 2) that belongs to the debtor, 3) within one year of filing for bankruptcy, 4) with the intent to hinder, delay or defraud a creditor or officer of the estate. The party objecting to the discharge has the burden of proving, by a preponderance of the evidence, that the debtor is not

10

entitled to discharge.   The court may infer intent to defraud from the debtor's actions.   Matter of Chastant, 873 F.2d 89 (5th Cir. 1989).

In the instant case, Debtors transferred their interest in the 2008 Toyota Tundra for $19,000, within the year prior to bankruptcy, and allege they transferred the proceeds to creditors.   Debtors presented no extrinsic evidence of such transfers to creditors.   Debtors also concealed the existence of their savings accounts at Chocolate Bayou Community Federal Credit Union and Bank of America.   This property would have been recognized as property of the bankruptcy estate, if it had been properly disclosed.   Debtors' fraudulent intent may be inferred from Debtors' having made frivolous purchases on their American Express card, in order to have their returns of the purchases shown as payments, Debtors' continuing frivolous purchases in the 90 days prior to the petition date in the above captioned Chapter 7 case, and the use of cash advances on credit cards to pay other credit card bills at a time when Debtors were insolvent.   The court concludes that discharge should be denied under Section 727(a)(2) of the Bankruptcy Code.

Under Section 727(a)(3), the party objecting to the debtor's discharge bears the initial burden of production to present evidence that the debtor failed to keep adequate records and that the failure prevented the party from evaluating the debtor's financial condition.   If the plaintiff satisfies this

initial burden of production-that the debtor's failure to produce
adequate records makes it impossible to discern his financial
status-the debtor must prove the inadequacy is justified under
all the circumstances.  Robertson v. Dennis ( In re Dennis), 330
F.3d 696 (5th Cir. 2003).

In the instant case, UST has not met its initial burden
to show that the debtor failed to keep adequate records and that
the failure prevented UST from evaluating Debtors' financial
condition.  UST has merely shown that Debtors failed to produce
the documents UST requested.  The court concludes that discharge
should not be denied under Section 727(a)(3) of the Bankruptcy
Code.

Under Section 727(a)(4), the party objecting to
discharge must prove by a preponderance of the evidence that (1)
the debtor made a statement under oath; (2) the statement was
false; (3) the debtor knew the statement was false; (4) the
debtor made the statement with fraudulent intent; and (5) the
statement was material to the bankruptcy case.  In re Duncan, 562
F.3d 688 (5th Cir. 2009).

False statements in the debtor's schedules are
sufficient to justify denial of discharge.  In re Beauboeuf, 966
F.2d 174 (5th Cir. 1992).

In the instant case, there are numerous false
statements in Debtors' schedules and statement of financial
affairs.  Debtors falsely stated that they had only one checking

12

or savings account, when they had three accounts, and thus
concealed the assets therein from the estate. Debtors falsely
stated that they had no furs or jewelry, when they had rings,
watches, and necklaces. Debtors falsely stated that they had no
business, when Mr. Spivey had a real estate business. Debtors
falsely stated they had transferred no property, when they had
sold two vehicles. Debtors falsely stated that they had made no
charitable contributions, when they had tithed over $15,000 to
their church. Debtors falsely omitted from their statement of
financial affairs that they had made payments to American Express
in the 90 days prior to bankruptcy. Each of these statements was
a false statement under oath. Each (except perhaps the $20 in
the Chocolate Bayou account) was material to the bankruptcy case.
The failure of Debtors to truthfully state their assets,
transfers, and payments has continued, even after the omissions
were brought to Debtors' attention.

Debtors' arguments blaming the errors and omissions on
their counsel are unavailing. Knowingly swearing to false
information cannot be blamed on counsel's conduct. See In re
Sholdra, 249 F.3d 380 (5th Cir. 2001). The court concludes that
discharge should be denied under Section 727(a)(4) of the
Bankruptcy Code.

With respect to Section 727(a)(5), the burden of
persuasion rests at all times on the party objecting to
discharge. However, the debtor cannot prevail if the debtor

13

fails to offer credible evidence after the objector makes a prima facie case.  The objector's burden of persuasion does not obviate the necessity for the debtor to provide a satisfactory explanation of the loss of his assets.  Matter of Reed, 700 F.2d 986 (5th Cir. 1983).

In the instant case, Debtors' explanation that they used the proceeds from the sale of the 2008 Toyota Tundra to pay creditors is not satisfactory, in the absence of extrinsic evidence of such payments.  The court concludes that discharge should be denied under Section 727(a)(5) of the Bankruptcy Code.

UST's argument for denial of discharge under Section 727(a)(6) is that because Debtors refused to produce the documents UST requested in its notice of examination under Rule 2004, and because Bankruptcy Local Rule 2004-1(e) deems an examination ordered if no response to the notice is served, the Debtors' refusal to produce such documents constitutes a failure to obey a lawful order of the court.  Because of the inherent opportunity for misuse of such a tactic, the court rejects UST's argument.  There is ample opportunity for a litigant to seek an order from the court, in order to provide the predicate for an action under Section 727(a)(6), without relying on a deemed order under the Local Rules.  The court concludes that discharge should not be denied under Section 727(a)(6) of the Bankruptcy Code.

Debtors clearly have not timely completed an instructional course in personal financial management.  Thus,

14

discharge should not be granted under Section 727(a)(11) of the Bankruptcy Code.[3]

When multiple rationales are advanced for denial of discharge, only one rationale is necessary to justify denial of discharge.  In re Moye, 418 Fed. Appx. 303 (5th Cir. 2011).  In the instant case, the court has concluded that there are grounds for denial of discharge under Sections 727(a)(2), 727(a)(4), and 727(a)(5) of the Bankruptcy Code.  Thus, the court concludes that discharge should be denied.

Based on the foregoing, a separate Judgment will be entered denying discharge to both Debtors in the above captioned Chapter 7 case.

Signed at Houston, Texas on March 29, 2013.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

---

[3]The usual procedure when debtors fail to complete the instructional course in personal financial management is that the case is closed without discharge.  Because the court has determined that discharge should be denied on other grounds, the court does not affirmatively address denial of discharge under Section 727(a)(11).